UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RESPONSIBLE FLUID POWER, INC, | 4:14-CV-04041-KES |
| Plaintiff, | |
| vs. | ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT |
| ALTEC INDUSTRIES, INC, | |
| Defendant. | |

Plaintiff, Responsible Fluid Power (RFP), filed a complaint against defendant, Altec Industries, Inc., alleging trade secret misappropriation, promissory estoppel, breach of contract, fraud and deceit, negligent misrepresentation, and tortious interference with business relationship. Docket 1. Altec filed a counterclaim against RFP for repayment of a debt. Docket 13. Altec moves for summary judgment on all claims. Docket 27. RFP opposes the summary judgment motion. Docket 31.

**BACKGROUND**

The facts, viewed in the light most favorable to RFP, the non-moving party, are as follows:

Altec is a corporation that manufactures products such as aerial devices, cranes, digger derricks, and shippers for use in the electrical utility, telecommunications, lights and signs, and contractor markets. RFP is a South Dakota corporation that manufactures hydraulic reservoirs (or tanks) for Altec, and Altec would incorporate RFP's tanks into certain Altec products.

Specifically, the tanks were predominantly used in Altec's digger derricks. Donald Haacke, the owner of RFP is not a professional engineer and has no vocational or post high school training in engineering. RFP never employed an engineer, but it did consult with an engineer named Jim Vlaanderen. Originally, RFP was located in Des Moines, Iowa. Haacke testified that he moved the business from Des Moines to Sioux Falls because: (1) he is originally from South Dakota and wanted to move back home; (2) the State of South Dakota promised him financial assistance; and (3) he was able to purchase a similar size facility in South Dakota for a much lower cost than his facility in Des Moines.

When RFP and Altec began negotiating the price Altec would pay for RFP's newly designed tanks, RFP was concerned about its profitability. To alleviate RFP's concerns, Altec promised that it would purchase tanks from RFP at higher margins in the future if RFP initially supplied tanks at lower margins. Altec also promised that RFP would get all of the business generated from customers needing replacement parts for the tanks.[1] RFP accepted these terms and began designing hydraulic reservoir tanks for Altec. The tanks previously provided to Altec by Innovative Fluid Handling (IFH) were built using six pieces of steel welded together using a butt weld. RFP then designed a tank built with three pieces of steel using a lap joint weld.[2] In 2010, RFP

---

[1] Altec denies that there was an agreement between Altec and RFP that Altec was going to continue to use RFP for any set period of time. Docket 28 ¶ 50.
[2] Altec states that the tank design was a collaborative effort between RFP and Altec. Docket 28 ¶ 24.

successfully developed a two-piece design and began manufacturing and selling this two-piece design to Altec.

The hydraulic reservoir manufactured by RFP is a steel box with a filtration system and a return filter. Altec provided RFP with specific dimensions that RFP had to comply with when designing the tanks.[3] The specific dimensions were Altec's sole contribution to the design of the tank. Except for the specific dimensions, RFP designed the tanks in their entirety. RFP contends that the process in which it builds these two-piece tanks is subject to trade secret protection. RFP provided the drawings of the tanks to Altec so that Altec could ensure that the tanks were the proper dimensions for inclusion in the overall design of the digger derrick.

In the summer of 2011, Altec instituted a new cleanliness standard for its hydraulic tanks. Shortly thereafter, Altec internally began a standardization process wherein it evaluated its current tank suppliers and made improvements in the design of its tanks, including changes to the filtration system and consolidation of part numbers. As part of the 2011 tank evaluation project, Altec provided drawings of a sixty-gallon tank to various tank manufacturers so the manufacturers could bid on the production of the sixty-gallon tank. After evaluating the tank suppliers in 2011, Ryan Hulleman recommended that Altec switch to IFH or Hegelson, to take over production of the sixty-gallon tank from RFP. Altec ultimately chose IFH. In 2013, RFP closed its doors.

---

[3] Altec contends that its engineers participated in the design of the tanks. Docket 28 ¶ 20.

3

Over the years, Haacke requested price increases from Altec and understood that by requesting higher prices, Altec would seek out quotes from other manufacturers. In the past, RFP had purchased parts from Zinga and sold them to Altec at a marked-up price. Eventually, Altec began purchasing the parts directly from Zinga. At times, Altec asked RFP to expedite orders and RFP would fill these expedited orders using its other customers' parts.

During the course of RFP and Altec's business relationship, RFP purchased filtration systems and other equipment from MP Filtri for use in the manufacture of hydraulic tanks. MP Filtri was Altec's designated filtration supplier. RFP failed to pay MP Filtri for all or some of the equipment that it purchased and used in tanks that it sold to Altec. RFP states that the amount, if any, it owes to MP Filtri is unknown.

## LEGAL STANDARD

Summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also In re Craig*, 144 F.3d 593, 595 (8th Cir. 1998). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a

4

genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "Further, 'the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, the dispute must be outcome determinative under prevailing law.' " *Id.* (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). The facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion" for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I.    Trade Secret Misappropriation Claim

RFP alleges misappropriation of a trade secret against Altec. RFP bears the burden of first establishing the existence of a trade secret and then must establish misappropriation. SDCL § 37-29-1(4) defines trade secret as:

> Information, including a formula, pattern, compilation, program, device, method, technique or process that:
> (i)     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (ii)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

SDCL § 37-29-1(4).

In *Weins v. Sporlender*, 569 N.W.2d 16, 20 (S.D. 1997), the South Dakota Supreme Court concluded that the existence of a trade secret is a mixed

question of law and fact. The legal question is "whether the information in question could constitute a trade secret under the first part of the definition of trade secret" under the statute. *Id.* Generally, a trade secret does not include "a marketing concept or new product idea submitted by one party to another." *Daktronics Inc. v. McAfee*, 599 N.W.2d 358, 361 (S.D. 1999) (quoting *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir. 1993)). "Simple possession of a non-novel idea or concept without more is generally, as a matter of law, insufficient to establish a trade secret." *Id.* (quoting *Frink America Inc. v. Champion Road Machinery Ltd.*, 48 F.Supp.2d 198, 206 (N.D.N.Y. 1999).

The remaining two parts of SDCL § 37-29-1(4)(i)-(ii) involve questions of fact. *Daktronics*, 599 N.W.2d at 361. "A court may determine a question of fact by summary judgment if it appears to involve no genuine issues of material fact and the claim fails as a matter of law." *Id.* at 362. Therefore, the court should evaluate if there are issues of material fact regarding whether the information can derive economic value and is generally known or easily ascertainable and whether the information was subject to efforts to maintain its secrecy. SDCL § 37-29-1(4)(i)-(ii).

### A. The process of building the two and three-piece tank falls within the definition of a trade secret as defined in SDCL § 37-29-1(4).

The initial question is whether RFP's process of manufacturing the tanks falls within the definition of a trade secret under South Dakota law. Construing the facts in the light most favorable to RFP, this court determines that the

6

process by which the tanks are manufactured qualifies as a trade secret pursuant to SDCL § 37-29-1(4). In *Paint Brush Corp. v. Neu*, 599 N.W.2d 384, 390 (S.D. 1999), the South Dakota Supreme Court reversed the trial court's grant of summary judgment on whether a process for manufacturing brushes was a trade secret. The president of Paint Brush Corporation (PBC) described in his affidavit a unique process by which PBC measured the necessary volume of filaments for each brush. *Id.* The court concluded that the process the president described fit the definition of a trade secret. *Id.* Similarly, Haacke testified that RFP developed a new way to bend the steel so that RFP only had to weld two pieces together instead of six. Docket 33-1 at 18. This method required less labor to build and created a more structurally sound tank. *Id.* This process—including where to bend, where to weld, how to weld, and what materials to use—constitutes a process or method that qualifies as a trade secret.

**B. There is a genuine issue of material fact regarding the level of collaboration between Altec's engineers and RFP.**

Altec argues that because Altec's engineers' participated in the design of the two or three-piece tank, RFP is prohibited from asserting that the two or three-piece design is a trade secret. Docket 30 at 8. Altec does not clarify in its motion whether it believes this fact negates elements (i), (ii), or both of the trade secret definitions expressed in SDCL § 37-29-1(4). Therefore, the court will analyze both.

Altec asserts that there was significant back and forth between Altec's engineers and RFP when formulating the design for the two and three-piece tanks, and that this collaboration prevents RFP from claiming that the design was a trade secret. Docket 30 at 5. RFP states that the only information Altec contributed to the design were the general dimensions of the tanks. Docket 31 at 10. Taking the facts in the light most favorable to the non-moving party, this court finds that there is a dispute as to a material fact with regard to the amount of collaboration between the two parties. RFP states that Altec only provided the dimensions to the tanks and approved the design, but that RFP "set out the number of metal pieces used, where bends and cuts were made, weld locations, type of welds, filtration systems, drop tubes, location of the filler breather, access cover design, filler flange design, how to cut, bend, and place baffles, and mounting." Docket 31 at 11. Based on these facts, there is a dispute as to the level of collaboration between the two parties. This dispute is a material fact because the amount of collaboration makes it more or less likely that the two or three piece design is generally known within the industry. This question goes directly to the element in SDCL § 37-29-1(4)(i), and it should therefore be determined by a jury.

Similarly, the dispute as to the amount of collaboration is a material fact as it relates to the "secrecy" element of the trade secret definition. SDCL § 37-29-1(4)(ii). The amount of collaboration between the parties makes it more or less likely that RFP took reasonable steps under the circumstances to maintain

8

the secrecy of the tank design. Therefore, this is an issue that should be decided by a jury.

### C. There is a genuine dispute as to whether the process of creating a two or three-piece tank is generally known within the industry.

The final two elements in SDCL § 37-29-1(4) are questions of fact. The two elements ask whether the process "derives independent economic value . . . from not being generally known" and whether the process is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* §§ (i)-(ii). "A court may determine a question of fact by summary judgment if it appears to involve no genuine issues of material fact and the claim fails as a matter of law." *Daktronics*, 599 N.W.2d at 362.

Altec claims that the design of the tanks cannot be a trade secret because the design was readily ascertainable through reverse engineering and because some of the design was already in use within the industry. Docket 30 at 8. The court will consider whether RFP's method is generally known within the industry. In *Daktronics*, the South Dakota Supreme Court affirmed the lower court's grant of summary judgment after it found that defendants' combination of a radar gun, console, and display to show baseball speeds was not novel. *Id.*   In its motion for summary judgment, Daktronics presented undisputed evidence that the idea of displaying baseball speeds had been used in several different locations in the past. *Id.* Therefore, the product was within the general knowledge of the industry, actually already existed. *Id.*

9

In the present case, Haacke testified that the process of designing a hydraulic tank is very complicated and that RFP's two or three-piece design was the first of its kind. Docket 33-1 at12. Haacke also testified that the reason RFP was able to manufacture the tanks using only two or three pieces was because RFP developed a new way to bend the steel and weld the pieces together. *Id.* at 10. In contrast to the evidence in *Daktronics*, Altec does not present undisputed evidence that the two or three piece design for the tanks was within the knowledge of the industry or already existed within the industry. Altec presents testimonial evidence from RFP's expert, Duane Wolf, that the steel box and Z mounting bracket were not new designs. Docket 29-8 at 12-13. But he was unable to verify whether the two-tab baffle or the two or three-piece designs were already known within the industry. *Id.* at 16. James Vlaanderen, however, did testify that other manufacturers used a two or three-piece design. Docket 29-7 at 15-17.

Similar to the court's evaluation in *Paint Brush* and construing the facts in the light most favorable to the non-moving party, the court finds that there is a dispute as to whether the design was already known within the industry. Based on Haacke's testimony, the two or three-piece design was not already in use in the industry, and Altec did not present undisputed evidence to show otherwise. Haacke also clarified that the trade secret at issue is the process by which the tanks are manufactured and assembled. Therefore, while a person may be able to observe that a tank only used two or three pieces, there is

evidence that the process that makes that design possible cannot be observed and cannot be reverse engineered.

### D. There is a genuine issue of material fact as to whether RFP took reasonable steps to maintain its secrecy.

Finally, Altec claims that RFP did not take reasonable steps to maintain the secrecy of the design because RFP never sought an application for a patent or trademark and RFP freely provided Altec with the drawings of the tanks. Docket 30 at 11-12. RFP acknowledges that it did not pursue a patent or trademark and that it disclosed the designs to Altec so that Altec could approve them. Docket 31 at 15-16. When deciding whether there are issues of fact for the jury to determine on the issue of secrecy, the court asks whether there is evidence that RFP took affirmative steps to keep the design secret. *See Weins v. Sporleder*, 569 N.W.2d 16, 23 (S.D. 1997) (finding that plaintiff never introduced evidence of active measures taken to maintain privacy of the product). The reasonableness of those steps is a question for the jury.

In *Weins*, the South Dakota Supreme Court found that the plaintiff had not presented any evidence of active measures taken to maintain secrecy because the plaintiff discussed the product with several people but never had them sign confidentiality agreements and left the product in areas visible to other people. 569 N.W.2d at 23. In contrast, RFP placed proprietary stamps on its design drawings, the employee involved in the design of the tanks was required to sign a non-disclosure agreement, the design drawings were kept on a password-protected computer, and all employees signed non-compete agreements. Docket 31 at 16-17. Therefore, in contrast to the plaintiff in *Weins*,

RFP has presented substantial evidence of the affirmative actions it took to protect the privacy of its designs, and the reasonableness of those actions shall be determined by a jury.

In conclusion, the court denies Altec's motion for summary judgment as to the trade secret misappropriation claim.

## II.   Promissory Estoppel/ Breach of Contract Claim

RFP alleges in its complaint claims for breach of contract and promissory estoppel. Docket 1. To recover under a breach of contract, a plaintiff must prove the existence of: (1) an enforceable contract; (2) a breach of the promise; and (3) resulting damages. *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 694 (S.D. 2011) (quoting *Bowes Constr. v. S.D. Dep't of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010). Generally, whether or not a contract exists is a question of law. *Behrens v. Wedmore*, 698 N.W.2d 555, 565 (S.D. 2005). But if in dispute, " 'the existence and terms of a contract are questions for the fact finder.' " *Id.* (quoting *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn. 1992)). Therefore, this court must decide, construing the facts in the light most favorable to the non-moving party, whether a valid and enforceable contract existed.

As an initial matter, the court determines which body of law governs the contract dispute in this case. The first alleged contract deals with the sale of hydraulic tanks and the second contract deals with the sale of replacement parts for the tanks. Article 2 of the Uniform Commercial Code (UCC), codified at SDCL § 57A-2, governs transactions in goods. *City of Lennox v. Mitek Indus.,*

*Inc.*, 519 N.W.2d 330, 332 (S.D. 1994). Goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." SDCL § 57A-2-105(1). RFP argues that Altec made two separate promises. First, RFP alleges that Altec promised to purchase tanks from RFP at higher margins in the future if RFP supplied the tanks at lower margins for a period of time. Docket 31 at 18. RFP also alleges that Altec promised to purchase replacement parts exclusively from RFP. Docket 33-1 at 61-62. Here, the tanks and the replacement parts to the tanks are clearly movable at the time they were identified to the contract and fall within the definition of goods.

The court must then analyze whether the parties entered into a contract. "A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." SDCL § 57A-2-204(1). A contract for sale can include "both a present sale of goods and a contract to sell goods at a future time." SDCL § 57A-2-106(1). Unless otherwise provided, a contract for the sale of goods for 500 dollars or more is not enforceable unless it is in writing. SDCL § 57A-2-201.

As proof of the first promise, RFP points to a part of Haacke's deposition testimony as evidence that Altec did make a promise to RFP. Haacke testified at his deposition that in 2001 or 2002 Tom Wilson, a former Altec employee, promised Haacke that if RFP would initially sell Altec the tanks at a reduced margin, Altec would pay more for the tanks at a later date. Docket 33-1 at 71.

13

Haacke then stated that Altec never purchased the tanks at a higher margin. *Id.* RFP also relies on Haacke's testimony as evidence of Altec's second promise. Docket 31 at 18. Haacke testified that no written agreement existed in which Altec agreed it would continue to use RFP to supply Zinga filters for replacement parts, but he testified that Altec orally promised to use RFP for replacement parts as long as RFP was in business and selling tanks to Altec. Docket 33-1 at 61-62.

Altec maintains that there was never an agreement between Altec and RFP that Altec would continue to use RFP forever or for any set period of time, so RFP's assertion that it agreed to sell Altec tanks at a lower price in consideration for a future, higher price is false. Docket 30 at 13. Altec refers to Donald Haacke's deposition testimony as evidence that such a contract never existed. *Id.* During Haacke's deposition defendant asked whether there was ever an expressed statement, either verbal or in writing, that Altec would continue to do business with RFP for any duration of time, and Haacke replied that there was not. Docket 29-2 at 9. Haacke simply stated that "every year Altec would come up . . . and show us what kind of performance we were doing. And we always looked really good based upon that they said they would continue doing business with us." *Id.* Altec argues that this testimony shows that Altec never promised to continue to buy tanks from RFP for a set period of time, but instead, Altec would do business with RFP as long as it made financial sense. Docket 30 at 13.

14

### A. Altec's oral promises to purchase higher priced tanks and replacement filters, if found to have occurred, would be valid contracts.

Altec argues that both oral promises violate the South Dakota Statute of Frauds and is therefore unenforceable, but Altec never explains why these promises violate SDCL § 53-8-2. Docket 35 at 11. Either way, SDCL § 53-8-2 does not apply to these contracts because they are contracts for the sale of goods. Instead, the governing statute is SDCL § 57A-2-201, which requires a contract for the sale of goods for 500 dollars or more to be in writing. Both contracts are for the sale of goods for more than 500 dollars, so they fall under the Statute of Frauds. But the doctrine of equitable estoppel or promissory estoppel may be applied to prevent a party from asserting the Statute of Frauds. *Farmers Elevator Co. of Elk Point v. Lyle*, 238 N.W.2d 290, 293 (S.D. 1976) (finding that equitable and promissory estoppel may prevent a party to an oral agreement from invoking the Statute of Frauds); *Jacobsen v. Gulbransen*, 623 N.W.2d 84, 90 (S.D. 2001). Here, plaintiffs do assert promissory estoppel in its complaint, so at the summary judgment stage, the lack of a writing does not vitiate the existence of a valid contract.

Finally, as discussed above, both parties rely on different interpretations of Donald Haacke's testimony to support their theory of the case. If a jury found that Altec orally promised to purchase higher priced tanks and replacement filters in the future in exchange for the sale of lower priced tanks currently, they could be enforceable contracts. Whether or not Altec promised it would later purchase higher priced tanks in exchange for lower priced tanks

15

now and whether or not Altec promised to purchase replacement filters exclusively from RFP are disputes of material facts that should be decided by a jury. Therefore, after viewing the facts in a light most favorable to RFP, this court finds as a matter of law that two enforceable contracts existed. Further, the court finds that there is a genuine dispute of material fact as to the existence and terms of the contract, which is to be left to a jury. Altec's motion for summary judgment as to RFP's breach of contract claim is denied.

**B. There is a genuine issue of material fact as to whether RFP detrimentally relied on Altec's promise.**

Altec argues that no genuine issue of material fact exists regarding RFP's promissory estoppel claim because no promise was ever made and RFP did not rely to its detriment on any promise made. The elements of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the loss to the promise must have been foreseeable by the promisor; and (3) the promisee must have reasonably relied on the promise made. *Canyon Lake Park L.L.C. v. Loftus Dental P.C.*, 700 N.W.2d 729, 739 (S.D. 2005). As discussed above, the court finds that there is a genuine issue of material fact as to whether Altec made any promises to RFP. Therefore, the court must determine if there is a genuine dispute of material fact about whether RFP relied on the promise to its detriment.

Defendant argues that RFP did not rely on the promise to its detriment because RFP moved its operation from Des Moines to Sioux Falls for reasons other than any promise Altec allegedly made to RFP. Docket 30 at 14. As evidence, defendant relies on Haacke's deposition testimony where he explains

16

that he moved to Sioux Falls because he is originally from South Dakota, because the state gave him financial assistance, and because he was able to purchase a similarly sized facility for less money. Docket 29-2 at 15. But RFP alleges in its response that RFP detrimentally relied on Altec's promise if it sold Altec tanks at a significantly lower price Altec would pay more for tanks in the future and that Altec would purchase a large number of replacement parts from RFP. Docket 1 at 3-4; Docket 31 at 19. Plaintiff relies on Haacke's deposition testimony as evidence of this detrimental reliance. *See* Docket 33-1 at 61-62, 71.

Both parties rely on different parts of and interpretations of Donald Haacke's testimony, and therefore, this court finds that there is a genuine dispute of material fact as to whether RFP relied to its detriment on Altec's promise. The final two elements of promissory estoppel—whether the reliance was foreseeable and reasonable—are issues of fact to be determined by the jury. Altec's motion for summary judgment as to RFP's promissory estoppel claim is denied.

### III.   Fraud/Deceit Claim

Plaintiff alleges that Altec committed fraud and deceit against RFP because Altec told RFP it would continue to do business with RFP but "instead planned to terminate its business once it had obtained the blueprints it needed from RFP." Docket 1 at 4. "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL § 20-10-1. Deceit is "a promise made without

17

any intention of performing." SDCL § 20-10-2. Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury. *Paint Brush Corp. v. Neu*, N.W.2d 384, 392 (S.D. 1999) (quoting *Dede v. Rushmore Nat'l Life Ins. Co.*, 470 N.W.2d 256, 259 (S.D. 1991). But summary judgment is proper if plaintiff does not produce any evidence of deceitful intent at the time the promise was made. *Garrett v. Bankwest, Inc.*, 459 N.W.2d 833, 847 (S.D. 1990). When the connection between the defendant and the fraud and deceit rests solely on conjecture, summary judgment is appropriate. *Roper v. Noel*, 143 N.W. 130, 132 (S.D. 1913).

In *Garrett*, the South Dakota Supreme Court affirmed the trial court's grant of summary judgment where plaintiff produced no evidence to indicate that defendant intended to deceive at the time redemption was discussed. 459 N.W.2d at 847-48. Plaintiff alleged that defendant agreed with plaintiff that defendant would purchase a ranch from a third party and then lease the ranch to plaintiff with an option to buy. *Id.* at 836. But the evidence in the record showed that defendant and plaintiff discussed the option of purchasing the ranch and that defendant did make an offer to purchase that was rejected by the third party. *Id.* at 847. Therefore, plaintiff did not present evidence that defendant ever intended to deceive plaintiff. *Id.*

Here, the only evidence RFP points to as proof of Altec's intent to deceive is a portion of Haacke's deposition testimony. Docket 31 at 20. Haacke testified that an Altec employee promised that Altec would purchase tanks at a high price if RFP would initially sell Altec tanks at a lower price, and that Altec never

18

purchased tanks at a higher price. Docket 33-1 at 72. Assuming that Haacke's
testimony is true—that an Altec employee promised to eventually purchase
higher priced tanks and Altec never did—there is no indication that Altec
intended not to follow through on its promise at the time of making the
promise. In fact, Haacke testified that this alleged promise took place in 2001
or 2002 and Altec did not decide to terminate its business relationship with
RFP until 2011. *Id.* at 71-73. Therefore, given the long business relationship,
RFP has not put forth evidence to show that Altec intended to deceive RFP in
2001 or 2002. This court finds that there is no genuine dispute as to any
material fact and summary judgment is granted to Altec on the fraud and
deceit claim.

### IV.    Negligent Misrepresentation

The tort of negligent misrepresentation occurs when "in the course of
business or any other transaction in which an individual had a pecuniary
interest, he or she supplies false information for the guidance of others in their
business transactions, without exercising reasonable care in obtaining or
communicating the information." *Meyer v. Santema*, 559 N.W.2d 251, 254 (S.D.
1997). "Generally, representations as to future events are not actionable and
false representations must be of past or existing facts." *Id.* at 255. There is one
exception to the general rule that representations as to future events are not
actionable. "A misrepresentation as to a future event may be actionable where
the parties to the transaction are not on equal footing but where one has or is
in a position where he should have superior knowledge concerning the matters

19

to which the misrepresentations relate." *Reitz v. Ampro Royalty Trust*, 61 N.W.2d 201, 203 (S.D. 1953).

This particular event is an example of a representation of a future event. RFP alleges that Altec misrepresented that it would purchase tanks at a higher price in the future and that RFP would get all future business for replacement parts. Docket 31 at 21. Therefore, in order for RFP to maintain its claim against Altec, the court must find that the exception to the general rule against future representations applies.

In *Bayer v. PAL Newcomb Partners*, 643 N.W.2d 409, 413 (S.D. 2002), the South Dakota Supreme Court ruled that the plaintiff and defendant were on equal footing, so the exception to the general future representations rule did not apply. In *Bayer*, plaintiff purchased lots in a proposed development with the intent to build on the lots and sell the homes. *Id.* at 410-11. The development did not live up to expectations and plaintiff sued the developer. *Id.* at 411. The plaintiff had built and managed real estate in the past and understood the risks involved in starting a new development. *Id.* at 413. Therefore, the court found that plaintiff was on the same footing as the defendant. *Id.*

In contrast, in *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 124 (S.D. 1977), the South Dakota Supreme Court found that the exception did apply because plaintiff was not on the same footing as defendant. Plaintiff executed a contract to lease a service station and the service station did not perform as well as expected. *Id.* at 123. Plaintiff had no prior knowledge or experience in

20

the business and plaintiff relied heavily on the expertise of the defendant's employee as well as the complicated and technical presentation of the service station's projections that had been prepared by the employee. *Id.* at 123. Based on that information, the court found that the exception applied because of the large disparity in knowledge between defendant and plaintiff. *Id.* at 124.

Here, Haacke testified in his deposition that his entire work background has been in fluid power, i.e. hydraulics. Docket 29-2 at 3. Prior to starting RFP, Haacke worked at another hydraulics company called SunSource, and after Haacke closed RFP he started a new job at another hydraulics company called Dakota Fluid Power. *Id.* Despite this long history in the hydraulic industry, RFP contends that Altec was on higher footing than Haacke because Altec knew "whether it would purchase tanks from RFP at higher margins and whether it would continue to go through RFP to procure replacement parts." Docket 31 at 21.

RFP's reasoning is flawed. The exception to the general rule regarding future events is applied in situations similar to the situation in *Aschoff*—where the plaintiff knows little or nothing about the subject matter and must rely on the defendant as an expert. *Aschoff*, 261 N.W.2d at 124. That is not the situation here. Haacke has spent his entire career in the hydraulics industry and did not have to rely on Altec's expertise. If the court were to accept RFP's argument that Altec was at an advantage because it knew whether or not it would continue to do business with RFP, the exception would swallow the rule. In any business discussion each party knows more than the other about their

21

individual statuses and does their best to make future predictions based on their present knowledge. But in the end, neither party can predict the future, and for that reason, representations as to future events are not actionable. The exception is meant to protect against a disparity as to knowledge of the industry and not as to knowledge of the future performance of the parties.

In conclusion, the court finds as a matter of law that representations as to future events are not actionable as a negligent misrepresentation claim and no exception applies here. Therefore, summary judgment is granted to Altec on the negligent misrepresentation claim.

**V.      Tortious Interference**

The elements of a claim of tortious interference with business relationships or expectancy are: (1)the existences of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship was disrupted. *Tibke v. McDougall*, 479 N.W.2d 898, 908 (S.D. 1992). RFP alleges two separate acts of tortious interference. First, that Altec interfered with RFP's other business relationships by demanding that RFP fill Altec's orders with inventory from other customers. Docket 1 ¶ 38. Second, that Altec began purchasing replacement parts from Zinga instead of purchasing the parts from RFP. Docket ¶ 40-41. To survive summary judgment, RFP must show that it will be able to introduce sufficient evidence in the record at trial to support all the elements of its claim. *Lawrence*

22

*Cnty. v. Miller*, 786 N.W.2d 360, 367 (S.D. 2010); *see also Tolle v. Lev*, 804 N.W.2d 440, 446 (S.D. 2011).

In *Tolle*, the plaintiff and defendant both worked as guides for a mountaineering school and the defendant served on the Board of Directors. *Id.* at 442. At one point, the plaintiff and defendant had a dispute as to a cabin in Montana and defendant emailed the board to disclose the nature of the dispute and collect some necessary information. *Id.* Around the same time, the mountaineering school asked plaintiff to return as a guide, but after learning of the Montana cabin issue, the school revoked its offer. *Id.* The plaintiff then commenced an action for tortious interference with a business relationship and relied on emails between the defendant and the board to demonstrate that defendant had the intent to interfere. *Id.* The court found that the emails did not show that defendant intentionally tried to get plaintiff fired because the content of the emails were limited to disclosure of the conflict and a request for information. *Id.* at 446. Further, there was no evidence that defendant knew that the board had asked the plaintiff to return as a guide. *Id.* Therefore, the court granted summary judgment and the South Dakota Supreme Court affirmed. *Id.*

Similar to the lack of evidence in *Tolle*, RFP has not introduced any evidence to demonstrate intent. RFP bases its claim on evidence that Altec would place a rush order and RFP would fill the rush order with other customers' parts. There is no indication that Altec ever intended or even suggested that RFP use other customers' parts. In fact, testimony from Haacke

23

indicates that RFP made the decision on its own to use other customers' parts for Altec's tanks. Docket 29-2 at 18. Therefore, the court grants Altec's motion for summary judgment on RFP's first tortious interference claim.

RFP also contends that Altec began purchasing replacement parts directly from Zinga with the intent to "get rid of [RFP]" and that such a move was unjustified because Altec had previously promised that RFP would be the sole provider of replacement parts to Altec's customers. Docket 31 at 22. RFP points to Haacke's deposition testimony where Haacke testified that the president of Zinga told him that Altec's purchasing manager said that Altec was trying to get rid of RFP. Docket 33-1 at 56. RFP relies on this inadmissible hearsay testimony as proof that Altec intentionally interfered with RFP's business expectations. Docket 31 at 22. Hearsay within hearsay and conclusory assertions are insufficient to establish a genuine issue of material fact. *Luther v. City of Winner*, 674 N.W.2d 339, 345 (S.D. 2004). RFP does not present any evidence other than Haacke's testimony to demonstrate that Altec intentionally interfered with RFP's business relationship, and Haacke's testimony is inadmissible hearsay within hearsay. Therefore, this court finds that there are no genuine issues of material fact as to RFP's second tortious interference claim and it grants Altec's motion for summary judgment.

## VI.  Counterclaim for Indemnification

Finally, Altec moves for summary judgment as to its counterclaim against RFP for repayment of a debt. Altec argues that it is entitled to summary judgment under either a contract theory or a theory of unjust enrichment.

24

Altec claims that it is entitled to indemnification from RFP under a contract theory because RFP agreed to certain terms and conditions that included an indemnification clause. Docket 29-11 at 3-4. The indemnification clause requires RFP to indemnify and defend Altec against allegations from suppliers such as MP Filtri. *Id.* at 3-4. The terms and conditions that Altec submitted are not signed by RFP or Haacke, but Altec also refers to Haacke's deposition testimony wherein he admits that he signed the terms and conditions agreement. Docket 36-1 at 3-4. But Haacke states in an affidavit that he never agreed to indemnify Altec. Docket 34 ¶ 16.

Because both parties rely on different parts of Haacke's testimony and the terms and conditions are not signed by RFP, there is a genuine issue of material fact as to whether RFP agreed to the terms and conditions. Based on this discrepancy in testimony, the court finds that there is a genuine issue of material fact of whether RFP ever agreed to the terms and conditions of the indemnification clause, so summary judgment is denied.

## CONCLUSION

Whether Altec misappropriated trade secrets and promised RFP that it would purchase tanks in the future is a question of fact to be decided by the jury. But there is no genuine issue of material fact about whether Altec intended to deceive RFP, negligently misrepresented its business intentions, or intended to interfere with RFP's business relationships. Finally, there is a dispute as to whether RFP agreed to indemnify Altec against claims from MP Filtri.

Therefore, it is

ORDERED that Altec's motion for summary judgment (Docket 27) is

denied in part and granted in part.

Dated October 4, 2016.

BY THE COURT:


*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE